USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-19-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
BSN MEDICAL, INC.,              :
                                :
          Plaintiff,            :
                                :          No. 10 Misc. 15
     -against-                  :          **Memorandum Opinion & Order**
                                :
PARKER MEDICAL ASSOCIATES,      :
LLC and A. BRUCE PARKER,        :
                                :
          Defendants.           :
------------------------------X

**JOHN F. KEENAN, United States District Judge Sitting in Part I:**

### I.   Background

Plaintiff BSN Medical, Inc. ("BSN") designs, manufactures, and sells medical supplies.  Defendant Bruce Parker is the general partner and President of Parker Medical Associates ("Parker Medical").  BSN alleges that in the 1980's, Bruce Parker developed a synthetic splinting product called Ortho-Glass; in 1996, he sold all of the Ortho-Glass business, including the patents and other intellectual property, to BSN.  However, in 2006, Parker allegedly began manufacturing a splinting product called EZY Splint (or Parker Splint) using the Ortho-Glass trade secrets and technology he previously sold to BSN.  Parker Medical's EZY Splint product directly competes with BSN's Ortho-Glass product.  The underlying complaint, currently pending in the Western District of North Carolina, asserts claims for, <u>inter</u> <u>alia</u>, copyright infringement, misappropriation

of trade secrets, and Lanham Act false advertising/unfair competition.

Movant Mesco Medical LLC ("Mesco") is a medical device and equipment wholesaler located in Randolph, New Jersey. Mesco purchases EZY Splint products from Parker Medical and resells them to end customers including hospitals and orthopedic doctor's offices. Mesco, which sells the EZY Splint product, and BSN, which sells Ortho-Glass, are alleged to be competitors in the Northern and Central New Jersey medical supply market. On November 22, 2010, BSN attempted to serve a subpoena issued from the District of New Jersey on Mesco seeking documents regarding the identity of customers who purchased EZY Splint and/or Parker Splint products from Mesco. Mesco objected to the New Jersey subpoena on procedural grounds. On December 3, 2010 BSN issued another subpoena out of the Southern District of New York seeking:

> 1.  Any and all documents (including those created and/or stored electronically) that comprise, refer, or relate to any communication between Mesco and Parker Medical Associates, LLC or any representative of Parker Medical Associates, LLC from January 1, 2006 to the present.
>
> 2.  Any and all documents (including those created and/or stored electronically) that comprise, refer, or relate to any communication between Mesco and Bruce Parker from January 1, 2006 to the present.
>
> 3.  Any and all documents (including those created and/or stored electronically) that comprise, refer, or relate to any communication between Mesco and Parker, Poe, Adams, and Bernstein, LLP from January 1, 2009 to the present.

    4.    Any and all documents (including those created and/or stored electronically) that comprise, refer, or relate to any communication between any attorney acting on Mesco's behalf and Parker, Poe, Adams, and Bernstein, LLP from January 1, 2009 to the present.

    5.    Except for those documents created or received by Mesco in its capacity as a distributor for BSN Medical, Inc., produce all documents (including those created and/or stored electronically) that comprise, refer, or relate to any communication that references, refers, or relates to BSN Medical, Inc., Ortho-Glass, or any variant thereof.

    6.    Documents sufficient to show Mesco's monthly sales, by customer, of any product manufactured by Parker Medical Associates, LLC, including products sold under brand names EZY Splint and/or Parker Splint, from January 1, 2007 to the present.

See Subpoena Dated Dec. 3, 2010, Duffy Cert., Ex. D. On December 17, 2010, Mesco moved in Part I to quash the subpoena issued by BSN. The parties appeared before this Court on January 18, 2011.

## II.    Analysis

Generally, parties may seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Although the Rules provide for broad discovery, "[t]o protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). Rule 45 should be read in conjunction with the limitations of discovery found in Rules 26

3

and 34 of the Federal Rules of Civil Procedure.  See Atwell v. City of New York, No. 07 Civ. 2365, 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008).  Thus, in determining the bounds of discovery, the court must balance the burden of production against the need for the requested documents.  Fed. R. Civ. P. 26(b)(2)(C)(iii); see Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.").  To achieve this balance, the court may specify conditions for discovery, including "limiting the scope of disclosure or discovery to certain matters" and "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(D), (G).

### A.   Request # 6

Mesco contends that in order to respond to Request # 6, it would have to disclose its proprietary customer lists to a direct competitor.  In determining whether information constitutes a trade secret, New York and North Carolina courts consider the following Restatement factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the

>business; (3) the extent of measures taken by the
>business to guard the secrecy of the information; (4)
>the value of the information to the business and its
>competitors; (5) the amount of effort or money
>expended by the business in developing the
>information; (6) the ease or difficulty with which the
>information could be properly acquired or duplicated
>by others.

N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (quoting Restatement of Torts § 757 cmt. b); Combs & Assocs., Inc. v. Kennedy, 555 S.E.2d 634, 640 (N.C. Ct. App. 2001).

There does not appear to be a strong dispute that the customer lists are trade secrets.  Mesco submitted the uncontested certification of its president, Mark Stephens, who states that:

>Mesco's customer lists and sales data are not
>information known outside of Mesco's business and
>constitute highly confidential information that
>is not made generally available.  Indeed, total
>sales information is not made available to most
>of Mesco's own employees.  It would involve a
>great deal of time and expense for another
>company to duplicate this information on its own.
>This information is highly confidential and
>represents a great asset which, if obtained by
>BSN, a direct competitor of Mesco, would have
>disastrous consequences to Mesco's business.

Stephens Cert. at ¶¶ 9-11.  Other courts have recognized customer lists as trade secrets.  See, e.g., N. Atl. Instruments, 188 F.3d at 46; Webcraft Techs., Inc. v. McCaw, 674 F. Supp. 1039, 1046 (S.D.N.Y. 1987) (protecting as a trade

secret a customer list that reflected "development of a specialized knowledge of the customer's operations and needs").

However, BSN submitted the certification of Prof. J.C. Poindexter, its damages expert in the underlying action, who explains that that the only way to accurately calculate the amount of sales BSN has lost to Parker Medical is to track individual customers' purchasing history.  BSN can refer to its own records to determine how much its Ortho-Glass sales have dropped, but it cannot with any degree of certainty attribute those losses to Parker Medical, especially in light of the fact that there are more than two splinting product manufacturers in the market.  But, if BSN can show that Customer 1 had a history of buying Ortho-Glass and then switched to EZY Splint, then it can establish a direct link between BSN's lost profits and Parker Medical's allegedly unfair trade practices.  See Finlon Cert., Ex. B, Poindexter Cert. at ¶¶ 4-5.  Thus, the identity of Mesco's customers is directly relevant to BSN's damages claim against Parker Medical, and is essential for Prof. Poindexter to do the kind of detailed tracking required to prove that BSN's damages were caused by Parker Medical as opposed to adverse market conditions or the actions of another splinting product manufacturer.

Even if Mesco's customer lists constitute trade secrets, the Court can impose sufficient protections to allay Mesco's

6

concerns about disclosing sensitive information to a competitor. BSN has proposed entry of a protective order limiting access to the customer list to BSN's attorneys and experts only, with no access granted to any BSN employee.  This proposal is even more restrictive than the protective order currently in place between the parties in the North Carolina action, which provides for "super confidential" designation of "highly sensitive information of any party that could cause serious competitive harm or other serious harm if such information is disclosed to any other person."  See Protective Order, Finlon Cert., Ex. F. Documents designated "super confidential" in the North Carolina action can only be disclosed to attorneys, experts, and a single designated representative of each party.[1]  BSN's willingness to forego access to Mesco's confidential information by any of its own representatives demonstrates that the document requests are made in good faith.  There is no allegation that BSN has ever engaged in anticompetitive conduct towards Mesco or any other splinting product manufacturer.  Finally, BSN has offered to

---

[1] At oral argument, Mesco contended that a protective order gives cold comfort because BSN violated the North Carolina protective order by attaching confidential documents it provided to BSN to motion papers filed in opposition to the instant application. BSN acknowledged the disclosure, but explained that the filing was inadvertent, and counsel is taking steps to remove the confidential material from the public docket.  The Court credits counsel's representation that such a mistake will not be repeated and presumes that all parties will abide by the highly restrictive protective order endorsed herein.

reimburse Mesco for reasonable costs associated with responding to the subpoena, offsetting any burden imposed on Mesco.  Since BSN has no other reasonable way to accurately ascertain its damages, since the information sought is directly relevant to BSN's damages claim, and since the Court can fashion protective measures such that BSN does not have access to Mesco's trade secrets, the motion to quash with respect to Request # 6 of the December 3, 2010 subpoena is denied.

### B.   Requests # 1, 2, and 5

In the underlying North Carolina action, BSN alleges that Parker Medical and Bruce Parker himself made false statements to customers about its EZY Splint product.  BSN further argues that Mesco's president Mark Stephens has made statements to the effect that EZY Splint is the same as or is "the original" Ortho-Glass.  Thus, BSN seeks the documents specified in Request # 1, 2, and 5 to determine whether Parker Medical and/or Bruce Parker told Mesco to make these statements.  Mesco objects that the Requests are so broad that they seek information irrelevant to the claims in the North Carolina action.

BSN's stated intention is to reach documents concerning their claims in the North Carolina action, but the requests as worded include any documents, whether business or personal, having anything to do with the relationship between Parker Medical and Mesco.  There are no facts presented about Mesco's

8

interactions with Parker Medical, but if, for example, the two entities have an extensive business relationship involving products other than EZY Splint, these requests would call for documents irrelevant to the question of whether Bruce Parker or Parker Medical directed Mesco to make false representations about the EZY Splint product.  Request # 5 is similarly overbroad.  It does not specify any time frame for the requested documents; as Ortho-Glass has been on the market for a significant period of time, the request as it is currently phrased could potentially cover a decade's worth of documents.  Furthermore, Request # 5 as written could reach internal sales strategies at Mesco and independent assessments of BSN's product which have nothing to do with Parker Medical.

     However, if Requests # 1, 2, and 5 are restricted to the subject matter of the underlying North Carolina action, and if Request # 5 is revised to include a date range, the documents requested could be relevant to BSN's false advertising claims against Parker Medical.  Again, BSN has offered to reimburse Mesco's reasonable costs to offset any burden.  Finally, to the extent these requests seek trade secrets, the protective order will prevent their disclosure.  Therefore, the motion to quash with respect to Requests 1, 2, and 5 is denied subject to BSN limiting the scope of the requests as indicated.

### C.    Requests # 3 and 4

BSN alleges that defense counsel in the underlying North Carolina action, Parker, Poe, Adams, and Bernstein, assisted various third parties in responding to BSN's subpoenas. BSN seeks documents specified in Requests # 3 and 4 to determine if Parker Medical's counsel was in any way involved with Mesco's response to the November or December 2010 subpoenas. Mesco objects on relevance grounds.

These requests are also broadly worded. If, for example, Parker, Poe, Adams, and Bernstein represents Mesco in other legal matters, the requests as they stand would call for irrelevant and privileged documents. However, Mesco has independent counsel in this Part I matter, and if documents do exist indicating non-privileged communications between Parker Medical's defense counsel in the underlying action and the third party distributor, that would certainly be impeachment evidence that is relevant to BSN's claims against Parker Medical. Again, BSN has offered to reimburse Mesco's reasonable expenses in responding to the subpoena, and the protective order would prevent disclosure of any trade secrets. Therefore, the motion to quash with respect to Requests # 3 and 4 of the December 3, 2010 subpoena is denied subject to BSN narrowing the requests to documents relating to the underlying North Carolina action.

### III.     Conclusion

Mesco's motion to quash is denied subject to the following conditions:  (1) BSN continue to ensure that confidential documents inadvertently filed in conjunction with this Part I motion be removed from the public docket; (2) BSN execute a protective order limiting access to the customer information provided by Mesco to attorneys' and expert's eyes only, with no access to any BSN employee; (3) BSN revise Requests Nos. 1-6 so that they are limited in scope to the subject matter of the underlying North Carolina lawsuit; and (4) BSN reimburse Mesco for reasonable costs incurred in complying with the December 3, 2010 subpoena.

**SO ORDERED.**

Dated:     New York, New York
           January 19, 2011

_____
John F. Keenan
United States District Judge
Part I